**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**

UNITED STEEL, PAPER AND FORESTRY, RUBBER MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, on behalf of USW Local 550

Plaintiff,

v.

SWIFT & STALEY INC.

Defendant.

Case No.: 5:24-cv-49-BJB

**COMPLAINT TO COMPEL ARBITRATION**

Pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW"), on behalf of USW Local 550 ("Local") (The USW and the Local may be referred to together as "Union") states the following in support of its Complaint against Swift & Staley Inc. ("Company"):

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is based on Section 301 of the LMRA, 29 U.S.C. § 185, which grants the district courts original jurisdiction over suits for violations of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy or the citizenship of the parties. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

2. Venue is proper because the Company maintains an office in this district and, additionally, because the claims at issue arose in this district. The Local also maintains an office in the district. Further, Section 301(a) of the LMRA specifically provides that venue is proper in any district court having jurisdiction of the parties.

**THE PARTIES**

3. Plaintiff USW and its affiliate Local are "labor organizations" as that term is defined in section 501(3) of the LMRA, 29 U.S.C. § 142(3), and within the meaning of Section 301(a) of the LMRA. At all material times, the Union represented employees at the Swift & Staley Inc. facility located at 532 Milliken Road, Paducah, Kentucky 42003. The Union is and was at all material times the duly authorized, certified, and exclusive collective-bargaining representative for all hourly rated employees and salaried employees of all departments within the Paducah, Kentucky complex, except guards.

4. The County of Residence for Plaintiff USW is Allegheny County, Pennsylvania. The County of Residence for USW's affiliate Local is McCracken County, Kentucky. The County of Residence for the Company is McCracken County, Kentucky. Because a substantial part of the events giving rise to the current claim occurred in McCracken County, the jury division is Paducah.

5. Defendant Company is and was at all material times an employer engaged in interstate commerce and engaged in an industry affecting commerce within the meaning of Section 301(a) of the LMRA, 29 U.S.C. § 185(a), as well as 29 U.S.C. § 142(1) and (3), and 29 U.S.C. § 152(2), (6), and (7).

**FACTS**

6. The USW, on behalf of the Local, and Company are parties to a collective bargaining agreement originally effective from February 5, 2018 to September 30, 2020, which was extended in 2020, again in 2021, and which remains effective ("CBA"). A copy of this collective bargaining agreement is attached as Exhibit 1. The CBA covers all hourly rated employees and salaried employees of all departments within the Paducah, Kentucky complex, except guards.

7. The Parties have agreed that allegations of contractual violations will be resolved through a grievance procedure and a "final and binding" arbitration process. See Ex. 1, pp. 34-37. Article 14 of the CBA, "Grievance Procedure," sets forth a three-step process for resolving any disputes arising under the terms of the agreement. See Ex. 1, pp. 34-36. Article 14, Section 2 of the CBA states that "[g]rievances arising out of discharge or disciplinary suspension may be initiated at this Second Step . . .." Grievances "not satisfactorily settled" in the Second Step may be appealed to the Third Step. See Ex. 1, pg. 35.

8. Article 15 of the CBA is entitled "Arbitration." See Ex. 1 pg. 37. Section 1 of Article 15, "Arbitration Right," states, "[i]f a grievance is not satisfactorily settled by the procedure outlined in Article 14, the grievance may be submitted to arbitration if it involves the interpretation or application of the Contract." *Id*. Section 2 of Article 15 states, "[t]he decision of the arbitrator shall be rendered on the interpretation and application of the Contract solely as it applies to the matter before him and shall not add to, disregard, or modify any of the provisions of this Contract. Such decision shall be final and binding on both parties." *Id*.

9. On October 24, 2023, the Company terminated Jason Gilbert, a member of the bargaining unit designated as USW Local 550-04, for alleged violation of Company policies.

10. Pursuant to the Article 14 in the CBA, the Union filed Grievance # SST-USW-23-019 ("Gilbert Grievance") on October 24, 2023, challenging the Company's decision to terminate Gilbert, alleging that the Company violated the CBA by wrongfully terminating Gilbert. A copy of the grievance is attached as Exhibit 2.

11. On October 31, 2023, the Parties met for the "Second Step" meeting in connection with the Gilbert Grievance. The Employer issued a response on November 3, 2023, in which it conveyed that it stood by its decision to terminate Gilbert because it believed that Gilbert violated Company policies. A copy of this response is attached as Exhibit 3.

12. On November 10, 2023, following up on the Employer's November 3 response, Local President Gary Wilson requested information from the Company regarding the Gilbert Grievance. Wilson asked for the Company's investigation report, a list of employees interviewed, copies of all evidence gathered, and a copy of the employee handbook. A copy of this response is attached as Exhibit 4.

13. On November 21, 2023, David Dunn, the Company's Director of Human Resources, responded to the Union's request for information concerning the Gilbert Grievance. See Exhibit 4. Dunn provided the requested information and he did not allege any timeliness issue at that time.

14. On November 30, 2023, Unit President Ricky Box requested a Third Step meeting for the Gilbert Grievance. Dunn replied that same day, asserting that "in accordance with section 4 [of the CBA], the time limits have passed and [the Company] consider[s] this issue closed." Local President Wilson, who was copied on these emails, responded to the email chain and disagreed with Dunn's interpretation of Article 14 of the CBA, entitled "Grievance Procedure," and Section 4 of that Article, entitled "Time Limits." Wilson reiterated the Union's request for a

Third Step meeting. Dunn again responded that the Company considered the matter to be "closed." A copy of this correspondence is attached as Exhibit 5.

15. On December 1, 2023, Wilson again requested a Third Step meeting to discuss the Gilbert Grievance in order to "determine if [the Union] will take this to arbitration." Dunn responded to assert again that the Company considered the matter to be "closed." See Exhibit 5.

16. On December 6, 2023, Brandon Duncan, the USW Staff Representative who services this Local, mailed a letter to Dunn in which he pointed out that the Company responded to the Union's information request on November 21, 2023. Duncan noted that Unit President Box then appealed the grievance to the Third Step on November 30, 2023. Thus, Duncan disagreed with the Company's interpretation and application of Article 14, Section 4 of the CBA and refuted that there was any "timeliness" issue. Duncan further asserted that the Company's stated reason for refusing to process the Gilbert Grievance was a procedural issue for the arbitrator. A copy of this letter is attached as Exhibit 6.

17. On December 14, 2023, Duncan emailed a copy of the same letter to Dunn. In his email, Duncan asked who he should talk with concerning Gilbert's termination and the Third Step grievance meeting. A copy of this email is attached as Exhibit 7.

18. On December 18, 2023, Dunn replied that the Company would "maintain [their] stance and not move this forward to the third step." See Exhibit 7.

19. On December 21, 2023, Duncan emailed Dunn a second letter concerning the Gilbert Grievance. In the letter, Duncan again wrote that the Company's stated reason for refusing to process the grievance was a procedural issue that should be submitted to an arbitrator. He also explained that the Union would strongly prefer to schedule a Third Step meeting "in order to

consider the grievance prior to arbitration." See Exhibit 7. A copy of this letter is attached as Exhibit 8.

20. On January 2, 2024, Dunn emailed Duncan regarding the Union's request to schedule a Third Step meeting for the Gilbert Grievance. Dunn again claimed that the time limits had lapsed and that the Company "will not entertain a third step hearing for this grievance." A copy of this communication is attached as Exhibit 9.

21. On January 12, 2024, Wilson emailed Dunn to ask for a response from the Company. Dunn responded that he had sent a response to Duncan, but that he had not selected "reply all" when he sent it. Dunn forwarded his January 2 response to Wilson. A copy of this email chain is attached as Exhibit 10.

22. On February 5, 2024, Duncan emailed Dunn to inform him that Gilbert signed a release for his personnel file. The Union requested a copy of Gilbert's personnel file from the Company. Duncan also asserted that "The Union is disappointed at the Company's continue[d] staunch obstruction to a 3rd step grievance meeting. Even to such, one can only surmise[] by the Company's last communication the Union must take addition[al] action through Federal Court in order to process Jason Gilbert's termination grievance." A copy of this email is attached as Exhibit 11.

23. On February 8, 2024, the Company provided the Union with an electronic copy of Gilbert's personnel file.

**FIRST CAUSE OF ACTION**

24. The allegations in paragraphs 1 through 23 are incorporated here by reference.

25. Through the CBA, the Parties have agreed that allegations of contractual violations will be resolved through a grievance procedure and, if necessary, a "final and binding" arbitration

process. The Gilbert Grievance alleges that the Company's decision to terminate bargaining unit member Jason Gilbert was harsh and unjust, and therefore, the decision was a violation of the CBA.

26. Federal law and the CBA permit the arbitrator to determine timeliness issues, as with any other dispute regarding procedural arbitrability.

27. By refusing to schedule the Third Step meeting, and by insisting that the Gilbert Grievance is "closed," the Company is refusing to process and arbitrate the Gilbert Grievance, which is a breach of its obligations under the CBA.

**PRAYER FOR RELIEF**

WHEREFORE, the Union requests the Court to enter judgment as follows:

28. Order the Company to process the Gilbert Grievance through the Third Step of the grievance procedure, or, alternatively, order the Company to proceed to arbitration for the Gilbert Grievance under the terms of the CBA;

29. Order the Company to pay the Union its costs and reasonable and necessary attorneys' fees in this matter; and

30. Issue any other relief that this Court determines is just and proper.

Respectfully submitted,

*/s/ Clement L. Tsao*
Clement L. Tsao (OH Bar # 0090105)
HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL, PLLC
600 Vine Street, Suite 2720
Cincinnati, Ohio 45202
Phone: 513.381.2224
Email: clement@hsglawgroup.com

Cassandra Maas (PA Bar No. 331894) *
United Steelworkers
60 Blvd. of the Allies, Room 807

Pittsburgh, PA 15222
Telephone: (412) 562-2530
Email: cmaas@usw.org
(*Pro Hac Vice* admission pending)

***Attorneys for Plaintiff***